ALB:CPK
F.# 2016R01391

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUN 22 2018 ★
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------X

UNITED STATES OF AMERICA

- against -

HAL ABRAHAMSON,

                Defendant.

----------------------------X

INFORMATION

Cr. No. CR 18 314
(T. 18, U.S.C., §§ 982(a)(7), 982(b)(1), 1347, 2 and 3551 et seq.; T. 21, U.S.C., § 853(p))

HURLEY, J.

LINDSAY, M.J.

THE UNITED STATES ATTORNEY CHARGES:

INTRODUCTION

At all times relevant to this Information, unless otherwise indicated:

I. Background

    A. The Medicare Program

        1. The Medicare Program ("Medicare") was a federal health care program providing benefits to persons who were at least 65 years old or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS"). Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

        2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3.  Medicare was divided into multiple parts. Medicare Part B covered the costs of physicians' services and outpatient care. Generally, Medicare Part B covered these costs only when, among other requirements, the services were medically necessary.

4.  In order to bill Medicare for the cost of treating Medicare beneficiaries and providing related benefits, items and services, medical providers and suppliers were required to apply for and receive a provider identification number ("PIN") or provider transaction access number ("PTAN") from the program. The PIN/PTAN allowed medical providers and suppliers to submit bills, known as claims, to Medicare to obtain reimbursement for the cost of treatment and related health care benefits, items and services that they had supplied and provided to beneficiaries.

5.  A medical provider was required to be enrolled in Medicare in order to submit claims. In order to enroll in the Medicare program, a medical provider was required to enter into an agreement with CMS in which the provider agreed to comply with all applicable statutory, regulatory and program requirements for reimbursement from Medicare. By signing the Medicare enrollment application, the provider certified that the provider understood that payment of a claim was conditioned on the claim and the underlying transaction complying with Medicare regulations, Medicare program instruction, and the law, and on the provider's compliance with all applicable conditions of participation in Medicare.

6.  Medical providers and suppliers were authorized to submit claims to Medicare only for services that were medically necessary.

7. To receive reimbursement from Medicare for covered services and items, medical providers were required to submit claims, either electronically or in writing, through Forms CMS-1500 or Forms UB-92. Each claim form required the medical provider to identify, among other information, the medical provider submitting the claim, the medical provider rendering the service, the referring physician, the patient and the services rendered. Each claim form required the provider to certify, among other things, that the services were medically necessary.

8. Providers submitted claims to Medicare using billing codes, also called current procedural terminology or "CPT" codes, which specifically identified the medical services provided to beneficiaries.

9. Medicare covered the costs related to skin grafts and wound packing services. Specifically, Medicare covered the costs of skin grafts and wound packing services associated with CPT codes listed in the chart below, among other things:

| CPT Code | Description of Procedure |
|---|---|
| Code 15004 | Skin grafts – for open wounds |
| Code 12021 | Wound packing |

B. The Private Health Care Benefit Programs

10. Anthem, Blue Cross/Blue Shield, Aetna Insurance Company, EmblemHealth, Optum, Healthfirst and Cigna (collectively, the "Private Benefit Programs")

were private health insurance plans, affecting commerce, under which medical benefits, items and services were provided to individuals.

11. Each of the Private Benefit Programs was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

12. The Private Benefit Programs compensated medical service providers for medical services that they actually rendered and that were medically necessary, including skin grafts and wound packing.

13. To receive reimbursement from the Private Benefit Programs, medical service providers submitted or caused the submission of claims, either electronically or in writing, to the Private Benefit Programs for payment of services, either directly or through a billing company.

C. <u>The Defendant</u>

14. The defendant HAL ABRAHAMSON was a licensed podiatrist who owned and operated Advanced Footcare Associates, also known as Long Island Podiatry Associates, P.C., and Podiatrist Foot Specialists (together, "Advanced Footcare Associates"), which provided podiatric services to patients from offices located in Plainview, New York and Rego Park, New York.

II. <u>The Fraudulent Scheme</u>

15. Between approximately January 1, 2013 and January 31, 2017, the defendant HAL ABRAHAMSON, together with others, devised and executed a scheme to enrich himself by submitting and causing the submission of false and fraudulent claims to

Medicare and the Private Benefit Programs. Specifically, the defendant, together with others, submitted claims to Medicare and the Private Benefit Programs for skin graft and wound packing services that were never done. The defendant also billed the Private Benefit Programs for work purportedly done by another podiatrist, whose reimbursement rate was higher than the defendant's, when the work was in fact done by the defendant or, in some instances, not done at all.

16. It was a part of the scheme that the defendant HAL ABRAHAMSON, together with others, created and caused to be created, and submitted and caused to be submitted to Medicare and the Private Benefit Programs for payment, false and fraudulent billing invoices. The billing invoices were false and fraudulent in that they contained one or more materially false representations about skin grafts, wound packing and services purportedly done by another podiatrist, including, among other representations, claims for payment for skin grafts that were never done and wound packing services that were never provided, as well as claims to the Private Benefit Programs for payment for work purportedly done by another podiatrist that was in fact done by ABRAHAMSON or, in some instances, was not done at all.

## HEALTH CARE FRAUD

17. The allegations contained in paragraphs one through 16 are realleged and incorporated as if fully set forth in this paragraph.

18. On or about and between January 1, 2013 and January 31, 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant HAL ABRAHAMSON, together with others, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud one or more health care benefit programs, as defined in Title 18, United States Code, Section 24(b), to wit: Medicare and the Private Benefit Programs, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, Medicare and the Private Benefit Programs, in connection with the delivery of and payment for health care benefits, items and services.

(Title 18, United States Code, Sections 1347, 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

19. The United States hereby gives notice to the defendant that, upon his conviction of the offense charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which requires any person convicted of a federal health care offense to forfeit property, real or personal, that constitutes, or is derived directly or indirectly from, gross proceeds traceable to the commission of such offense.

20. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

(e) has been commingled with other property, which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(7) and 982(b)(1); Title 21, United States Code, Section 853(p))

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY: _____
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136