# GARFUNKEL WILD, P.C.
### ATTORNEYS AT LAW

111 GREAT NECK ROAD • GREAT NECK, NEW YORK 11021
TEL (516) 393-2200 • FAX (516) 466-5964

www.garfunkelwild.com

JOHN G. MARTIN
Partner
Licensed in NY
Email: jmartin@garfunkelwild.com
Direct Dial: (516) 393-2214

FILE NO.:  15489.0002

April 7, 2020

Hon. Denis R. Hurley
United States District Court
United States Courthouse
Eastern District of New York
Central Islip, NY

Re: United States v. Hal Abrahamson

Dear Judge Hurley:

We write on behalf of our client, Dr. Hal Abrahamson, to respectfully request that his sentence be modified pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) in light of the COVID-19 pandemic. Dr. Abrahamson presently is incarcerated at the minimum security satellite camp at FCI Otisville.

### **Dr. Abrahamson**

On June 27, 2017, Dr. Abrahamson appeared before your honor and pled guilty to Health Care Fraud. Dr. Abrahamson cooperated completely with the lengthy government investigation, providing thousands of documents and agreeing to waive indictment and plead guilty to an information immediately upon the completion of the investigation. During the time between his plea and sentence Dr. Abrahamson obeyed all Court directions and appeared promptly for all court appearances. The Court sentenced him to one year and one day of incarceration followed by one year of supervised release. The Court also ordered that $869,651.99 be paid in restitution. Dr. Abrahamson paid $800,000 on the date of sentence, satisfying over 90% of his restitution obligation.

Dr. Abrahamson timely self-surrendered to FCI Otisville in January of this year. Dr. Abrahamson is likely to be eligible for release in as little as four months, at least under work release or release to a halfway house. Dr. Abrahamson has maintained an unblemished disciplinary record while incarcerated at Otisville, and he has participated in numerous BOP rehabilitation programs.

### The Situation At FCI Otisville

On Friday, March 27, 2020, Otisville staff informed the residents that an inmate at the camp had tested positive for COVID-19. According to the current BOP website two staff have also tested positive. https://www.bop.gov/coronavirus/.

My client advises me that over the past weekend two more Otisville residents have been quarantined with Covid symptoms, and that just last night a resident was taken to a hospital with a fever of 104. Other prisoners are concealing symptoms to avoid being subjected to isolation.

The camp at Otisville is overcrowded, and is at double its capacity. Inmates are kept in close quarters and eat shoulder to shoulder.

As you are aware, COVID-19 is highly contagious and is spreading at a rapid rate. In New York State, more than 66,000 individuals have tested positive for the virus, resulting in at least 1,200 deaths. Orange County -- where FCI Otisville is located -- has registered over 1,400 cases, and New York City, located an hour-and-a-half drive from Otisville, has reported over 72,000 cases.

In the Otisville camp, 120 inmates eat elbow-to-elbow at the same time, share one large bathroom with a handful of stalls and a handful of showers, and sleep together in bunks beds only a few feet apart that are divided principally between two dormitories (as opposed to individual cells). The two dormitories are separated only by the shared bathroom. There is no place to self-isolate. In short, measures being taken by BOP cannot help but be insufficient. See *Basank*, 2020 WL 1481503, at *5.

### The Particular Risk to Dr. Abrahamson

**Dr. Abrahamson, at 57 years old, suffers from Diabetes, Obesity and Hypertension, two factors that place him in a very high risk category. He is also taking 8 prescription medications, and has recently had additional health issues, as the overwhelmed BOP health staff is unable to address his pre-existing conditions. Dr. Abrahamson has only had his blood pressure checked twice in the past 2 weeks and he lost consciousness a little over one week ago due to incorrect dosing of his blood pressure medication**

According to the World Health Organization, the populations most at risk of suffering a severe form of the disease include "[o]lder people, and those with underlying medical problems like cardiovascular disease [and] diabetes." The CDC similarly has explained that individuals over the age of 65 and **people of any age who have serious underlying medical conditions, including heart conditions, diabetes, and obesity** are at higher risk for severe illness from COVID19.

According to the Centers for Disease Control and Prevention (CDC), preliminary US data from February 12, 2020 – March 28, 2020 shows the following in patients who tested positive

for COVID-19 and whose data (including presence or absence of underlying health conditions or risk factors) was reported to the CDC: 78% of Intensive Care Unit (ICU) admissions and 71% of non-ICU hospital admissions occurred among persons with one or more underlying health condition; and among both ICU patients and hospitalized non-ICU patients with positive COVID-19 tests, **the most single most common underlying health condition was diabetes** (not including the categories "One or more conditions," "Other chronic disease," and "None of the above"), indicating the high risk of severe outcomes for those with diabetes and other risk factors who develop COVID-19.[1]

The CDC also published guidance saying that data from both China and Italy, whose COVID-19 outbreaks preceded that of the United States, is consistent with the preliminary data published by the CDC. Additionally, they have written that the data they cite from these nations shows that individuals with diabetes and/or hypertension "might be at higher risk for severe disease or death from COVID-19."[2] Other reports have shown similar correlations, and the CDC has published clinical guidelines for healthcare professionals treating patients with COVID-19 which state that **"hypertension... [and] diabetes... have... been associated with increased illness severity and adverse outcomes**."[3]

A study from China recently published in the Journal of the American Medical Association revealed that among patients with COVID-19 who developed Acute Respiratory Distress Syndrome (ARDS), a condition which may require ventilator use, the most frequent coexisting conditions were hypertension (27% of patients) and diabetes (19%).[4] Other reports from China

---

[1] Preliminary Estimates of the Prevalence of Selected Underlying Health Conditions Among Patients with Coronavirus Disease 2019—United States, February 12–March 28, 2020. CDC COVID-19 Response Team. MMWR Morb Mortal Wkly Rep. 2020.

[2] COVID-19 Surveillance Group. Characteristics of COVID-19 patients dying in Italy: report based on available data on March 20th, 2020. Rome, Italy: Instituto Superiore Di Sanita; 2020. https://www.epicentro.iss.it/coronavirus/bollettino/Report-COVID-2019_20_marzo_eng.pdf

[3] "Management of Patients with Confirmed 2019-NCoV." Centers for Disease Control and Prevention , Centers for Disease Control and Prevention, 20 Mar. 2020, www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html.

[4] Wu, Chaomin, et al. "Risk Factors Associated With Acute Respiratory Distress Syndrome and Death in Patients With Coronavirus Disease 2019 Pneumonia in Wuhan, China." JAMA Internal Medicine , 2020, doi:10.1001/jamainternmed.2020.0994.

have indicated that individuals with diabetes and hypertension are amongst the most severely ill patients with COVID-19, generally.[5]

Additionally, within a recently examined sample of COVID-19 patients in Italy, 73.8 percent of those who died from the disease suffered from hypertension; 33.9 percent suffered from diabetes.[6]

Finally, while the CDC relies on the age of 65 as presenting an enhanced risk, there is some question that such a cutoff is warranted. "Different estimates are given -- age 50, 60, 65, 70 — as to when the calendar presents a special threat of harm from the virus. The current CDC number is 65. The different estimates are natural enough. Unlike the law, nature and its diseases do not respect a bright line crossed on a particular birthday. But it is agreed that infected individuals of a relatively advanced age are likely to suffer more than the young." People of the State of New York ex rel. Corey Stoughton, Esq., v. Cynthia Brann, Comm'r, New York City Dep't of Correction, et al.; INDEX NO 4510782020, 2020 WL 1679209, at *3 (N.Y. Sup. Ct. Apr. 6, 2020) (Dwyer, J.).

**Being Confined at Otisville Presents An Unacceptable Risk**

One public health expert has explained: "If you wanted to set up a situation that would promote rapid transmission of a respiratory virus, you would say prison: it's close quarters, unsanitary, individuals in frequent contact." In such situations, it is "nearly impossible to provide infection control."

Other experts describe the possibility of "accelerated transmission and poor health outcomes of patients with COVID-19 in prisons and jails" as "extraordinarily high" due not only to the close quarters in which the inmates reside, but also the quality and quantity of available medical care and the fact that hundreds of individuals – from staff to new arrestees -- enter and leave detention facilities daily.10 These dangers are not theoretical. During the COVID-19 outbreak in China, prisons became hotbeds of infection despite stringent control measures, and press reports indicate that the same is now occurring at FCI.

In order to protect oneself and others from contracting the disease, the CDC recommends individuals: "Stay at least 6 feet (2 meters) from other people," "Do not gather in groups," and

---

[5] Yang, Xiaobo, et al. "Clinical Course and Outcomes of Critically Ill Patients with SARS-CoV-2 Pneumonia in Wuhan, China: a Single-Centered, Retrospective, Observational Study." The Lancet Respiratory Medicine , 2020, doi:10.1016/s2213-2600(20)30079-5.

[6] COVID-19 Surveillance Group. Characteristics of COVID-19 patients dying in Italy: report based on available data on March 20th, 2020. Rome, Italy: Instituto Superiore Di Sanita; 2020. https://www.epicentro.iss.it/coronavirus/bollettino/Report-COVID-2019_20_marzo_eng.pdf

"Stay out of crowded places and avoid mass gatherings."[7] These conditions are near-impossible to maintain when confined in a correctional facility such as FCI Otisville.

To make matters worse, Orange County, NY, where FCI Otisville is located, is experiencing a dramatic uptick in the number of COVID-19 cases in the community and the number of casualties due to the disease. According to the Orange County Health Department, the community has seen the number of recorded deaths from COVID-19 multiply by a factor of 6 in the past week (3/30/20 – 4/6/20), from 12 to 76. In the same timespan the number of recorded cases has more than doubled, from 1,432 to 3,533 cases.[8] This increase in cases in the surrounding community makes it more likely for COVID-19 to enter and spread within FCI Otisville itself. According to the Bureau of Prisons, this has already started, as official statistics show that as of April 6th, 2020 there have been 3 prison staff who have tested positive and 1 inmate.[9]

The longer the delay in releasing or transferring to home confinement vulnerable inmates, such as Hal Abrahamson, the greater the risk is that facilities such as FCI Otisville will become reservoirs for growth of the disease - giving it a base from which to grow even faster in local communities and the country as a whole. This situation will greatly impact inmates and their families, federal employees at the facilities and their families, and the local communities and nation at large.

### Dr. Abrahamson's Existing Efforts and Outlook

Dr. Abrahamson has already made an application for Compassionate release pursuant to the Cares Act. However, he has been advised that such applications can take up to 60 days to be evaluated and can drag on for 6 months. Infections at Otisville are rising daily however, and given the conditions time is of the essence. This Court can and should move more quickly than the Bureau of Prisons to protect Dr. Abrahamson's health and safety.

In addition, if released Dr. Abrahamson has access to a vacant residence where, if released, he would be able to completely quarantine himself and avoid any risk to others due to

---

[7] "Social Distancing, Quarantine, and Isolation." Centers for Disease Control and Prevention, Centers for Disease Control and Prevention, 4 Apr. 2020, www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html.

[8] "COVID-19/Coronavirus: Orange County, NY." COVID-19/Coronavirus | Orange County, NY, Orange County Health Department, 6 Apr. 2020, www.orangecountygov.com/1936/Coronavirus.

[9] 12 "Federal Bureau of Prisons - COVID-19 Coronavirus." BOP, 6 Apr. 2020, www.bop.gov/coronavirus/.

Hon. Denis R. Hurley
April 7, 2020
Page 6

what is his likely exposure while at Otisville. Dr. Abramson will present no risk of exposing anyone else to the disease.

Similarly, Dr. Abrahamson's exemplary behavior since the beginning of the investigation in this case, coupled with his age and his extraordinary acceptance of responsibility, family ties (his wife, mother and children live in the area and support this application 100%) provide more than adequate assurances that this first time offender poses zero risk of recidivism.

As a result of both his age and medical status, should Dr. Abrahamson become infected with COVID-19, he faces a substantial risk of suffering a severe form of the disease or even death.

We ask that you find that the risk COVID-19 poses to Dr. Abrahamson's health amounts to an "extraordinary and compelling" circumstance that warrants transferring Dr. Abrahamson to supervised release with a special condition of home confinement for the duration of his sentence.

### **The Court's Authority to Act**

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), this Court may "reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction." We respectfully submit that Dr. Abrahamson's age and pre-existing health conditions in combination with the COVID-19 pandemic provide extraordinary and compelling reasons to modify his sentence to permit his immediate release to home confinement. See *Basank v. Decker*, 2020 WL 1481503, at *5 (The spread of COVID-19 "is measured in a matter of a single day -- not weeks, months, or years.").

Such action by this Court would not be unprecedented. A noted, as the number of COVID-19 cases has grown, courts have increasingly taken action to protect the health of at-risk inmates and detainees. *See United States v. Camp*agna, 2020 WL 1489828 (S.D.N.Y. Mar. 27, 2020) (modifying defendant's sentence to replace his outstanding term of imprisonment with an equal period of home incarceration); *United States v. Perez*, No. 19 Cr. 297 (PAE), Amended Order, Dkt. No. 62 (S.D.N.Y. Mar. 19, 2020) (temporarily releasing pre-trial defendant from custody during the public health crisis); *Coronel v. Decker*, 2020 WL 1487274 (S.D.N.Y. Mar. 27, 2020) (ordering plaintiffs' immediate release from ICE custody).

Dr. Abrahamson makes this application knowing that the crimes he committed were serious. He understands that a substantial term of incarceration was appropriate. At the time the Court sentenced Dr. Abrahamson, however, incarceration posed little risk to his health. In light of this unprecedented change in circumstances, we respectfully request that the Court exercise its power to modify Dr. Abrahamson's sentence and direct that he be released to home confinement to serve the remainder of his sentence.

We have informed the government of this request, and it has not yet determined its position.

Respectfully,

_____/s/_____

John G. Martin